IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

FILED

NOV 2 2022

CLERK, U S DISTRICT CLERK
WESTERN DISTRICT OF TEXAS
BY_____
                    DEPUTY

| | | |
|---|---|---|
| IDENTITY SECURITY LLC,<br>    PLAINTIFF, | §<br>§<br>§ | |
| V. | § | CAUSE NO. 1:22-CV-58-LY |
| | §<br>§ | |
| APPLE, INC.,<br>    DEFENDANT. | §<br>§ | |

## **MEMORANDUM OPINION AND ORDER ON CLAIMS CONSTRUCTION**

Before the court are the parties' Joint Claim Construction Statement filed January 7, 2022 (Doc. #50), Defendant Apple, Inc.'s ("Apple") Opening Claim Construction Brief (Doc. #32), Plaintiff Identity Security LLC's ("Identity") Responsive Claim Construction Brief (Doc. #33), Apple's Reply Claim Construction Brief (Doc. #41), Identity's Sur-Reply Claim Construction Brief (Doc. #44), Identity's Motion to Supplement Claim Construction Record (Doc. #67), and all related briefing.

The court held a claim-construction hearing on March 9, 2022. *See Markman v. Westview Instruments, Inc.,* 52 F.3d 967, 976 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). The court renders this memorandum opinion and order to construe certain terms of United States Patent Nos. 7,493,497 ("'497 Patent"), 8,020,008 ("'008 Patent"), 8,489,895 ("'895 Patent"), and 9,507,948 ("'948 Patent") (collectively, the "Patents-in-Suit"). Having considered the patents, prosecution history, applicable law, briefing, and arguments of counsel, the court renders the following claim-construction order.

### I. Introduction

Identity sued Apple in the Waco Division of the United States District Court for the Western District of Texas, alleging that Apple infringes on the Patents-in-Suit through its "Secure

Enclave" system, which provides security and authentication measures in various Apple products such as iPhones, iPads, and MacBooks. The Patents-in-Suit share a common specification and describe a "digital identity device" that uses digital identity data and a microprocessor with a unique identifier to secure digital transactions. The Waco Division transferred the case to this court on January 20, 2022.

## II.     Legal Standard

Determining infringement is a two-step process. *See Markman*, 517 U.S. at 384 ("[There are] two elements of a simple patent case, construing the patent and determining whether infringement occurred . . . ."). First, the meaning and scope of the relevant claims must be ascertained. *Id.* Second, the properly construed claims must be compared to the accused device. *Id.* Step one, claim construction, is the issue before the court.

Claim construction is "'exclusively' for 'the court' to determine." *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 321 (2015). The court construes patent claims without the aid of a jury. *See Markman*, 517 U.S. at 391. The words of a claim "are generally given their ordinary and customary meaning." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quoting *Vitronics Corp v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)). "[T]he ordinary and customary meaning of a claim term is the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention . . . ." *Id.* at 1313. The person of ordinary skill in the art is considered to have read the claim term in the context of the entire patent. *Id.* To ascertain the meaning of a claim, a court must look to the claim, the specification, and the patent's prosecution history. *Id.* at 1314–17.

Claim language guides the court's construction of a claim term. *Id.* at 1314. "[T]he context in which a term is used in the asserted claim can be highly instructive." *Id.* Other claims, asserted

and unasserted, can provide more instruction because "terms are normally used consistently throughout the patent . . . ." *Id.* Differences among claims, such as additional limitations in dependent claims, can provide more guidance. *Id.* at 1314–15.

Claims must also be read "in view of the specification, of which they are a part." *Forest Lab'ys, LLC v. Sigmapharm Lab'ys, LLC*, 918 F.3d 928, 933 (Fed. Cir. 2019). "[T]he specification 'is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Phillips*, 415 F.3d at 1315 (quoting *Vitronics*, 90 F.3d at 1582). In the specification, a patentee may define a term to have a meaning that differs from the meaning that the term would otherwise possess. *Id.* at 1316. In such a case, the patentee's lexicography governs. *Id.* The specification may also reveal a patentee's intent to disavow claim scope. *Id.* Such intention is dispositive of claim construction. *Id.* Although the specification may suggest that a certain embodiment is preferred, a particular embodiment appearing in the specification will not be read into the claim when the claim language is broader than the embodiment. *Electro Med. Sys., S.A. v. Cooper Life Scis., Inc.*, 34 F.3d 1048, 1054 (Fed. Cir. 1994).

The prosecution history is another tool to supply the proper context for claim construction because it shows how the inventor understood the invention. *Phillips*, 415 F.3d at 1317. A patentee may also serve as his own lexicographer and define a disputed term in prosecuting a patent. *Home Diagnostics, Inc. v. LifeScan, Inc.*, 381 F.3d 1352, 1356 (Fed. Cir. 2004). Similarly, distinguishing the claimed invention over the prior art during prosecution indicates what a claim does not cover. *Spectrum Int'l, Inc. v. Sterilite Corp.*, 164 F.3d 1372, 1378–79 (Fed. Cir. 1988). The doctrine of prosecution disclaimer precludes a patentee from recapturing a specific meaning that was previously disclaimed during prosecution. *Omega Eng'g, Inc. v. Raytek Corp.*, 334 F.3d

3

1314, 1323 (Fed. Cir. 2003). A disclaimer of claim scope must be clear and unambiguous. *Middleton, Inc. v. Minnesota Mining & Mfg. Co.*, 311 F.3d 1384, 1388 (Fed. Cir. 2002).

Although "less significant than the intrinsic record in determining the legally operative meaning of claim language," the court may rely on extrinsic evidence to "shed useful light on the relevant art." *Phillips*, 415 F.3d at 1317 (internal quotations omitted). Technical dictionaries and treatises may help the court understand the technology and the way one skilled in the art might use a claim term, but such sources may also provide overly broad definitions or may not be indicative of how a term is used in the patent. *See id.* at 1318. Similarly, expert testimony may aid the court in determining the meaning of a term in the pertinent field, but "conclusory, unsupported assertions by experts as to the definition of a claim term are not useful to a court." *Id.* Generally, extrinsic evidence is "less reliable than the patent and its prosecution history in determining how to read claim terms . . . ." *Id.* Extrinsic evidence may be useful when considered in the context of the intrinsic evidence, but it cannot "alter a claim construction dictated by a proper analysis of the intrinsic evidence." *Id.* at 1319; *On-Line Techs., Inc. v. Bodenseewerk Perkin-Elmer GmbH*, 386 F.3d 1133, 1139 (Fed. Cir. 2004). To the extent the court "make[s] subsidiary factual findings about th[e] extrinsic evidence," the court construes the claims in light of those factual findings. *Teva Pharms.*, 574 U.S. at 320.

### III. Analysis

The parties present two overarching disputes for the court's consideration. First, the parties dispute whether certain terms are drafted in a means-plus-function format. *See* 35 U.S.C. § 112, ¶ 6 ("Section 112 ¶ 6"); *Williamson v. Citrix Online*, LLC, 792 F.3d 1339, 1347–49 (Fed. Cir.

4

2015).¹ The parties also dispute whether the claims are indefinite even if the court finds that Section 112 ¶ 6 does not apply. *See* 35 U.S.C. § 112, ¶ 2 ("Section 112 ¶ 2").² For the second set of terms, the parties dispute the construction of claim language that recites a "microprocessor identity" (or "microprocessor identity information") that "uniquely identifies" the microprocessor (or the "microprocessor identity device"). The court will address each dispute in turn.

A.  **First set of disputed terms**

The parties first dispute whether Section 112 ¶ 6 applies to certain terms that describe binding the "digital identity data" to the "microprocessor," "microprocessor identity," or "microprocessor identity device," depending on the claim. Apple argues that Section 112 ¶ 6 applies and that the terms are indefinite because they fail to recite sufficient structure. Identity argues that Section 112 ¶ 6 does not apply and the terms should be given their plain and ordinary meaning. The parties also dispute whether the claims are indefinite even if the court finds that Section 112 ¶ 6 does not apply. The parties' proposed constructions are listed in the following table:

| Claim Term | Identity's Construction | Apple's Construction |
|---|---|---|
| "the digital identity data is bound to the microprocessor identity by encrypting the digital identity data using an algorithm that uses the microprocessor identity"<br><br>('497 Patent, Claim 1) | Section 112 ¶ 6 does not apply; not indefinite under Section 112 ¶ 2; plain and ordinary meaning. | Section 112 ¶ 6 applies.<br><br>Function: "binding the digital identity data to the microprocessor identity by encrypting the digital identity data using the microprocessor identity" |

---

¹ The Leahy-Smith American Invents Act of 2011 (the "Act") changed the numbering of the relevant subsection from Section 112 ¶ 6 to Section 112(f). Because the substance of the subsection did not change, the court will refer to the relevant subsection as Section 112 ¶ 6 in line with the numeration at the time of the patent filing.

² *See supra* note 1. The Act changed the numbering of the relevant subsection to Section 112(b), but the court will refer to it as Section 112 ¶ 2.

| | | Structure: microprocessor, e.g., Fig. 4, Fig. 6 (405, 605); no algorithm disclosed; indefinite.<br><br>Alternatively: to the extent Section 112 ¶ 6 does not apply: indefinite under Section 112 ¶ 2. |
|---|---|---|
| "the digital identity data is bound to the microprocessor identity device by encoding, using the microprocessor, the digital identity data using an algorithm that uses the microprocessor identity information"<br><br>('008 Patent, Claim 1) | Section 112 ¶ 6 does not apply; not indefinite under Section 112 ¶ 2; plain and ordinary meaning. | Section 112 ¶ 6 applies.<br><br>Function: "binding the digital identity data to the microprocessor identity device by encoding the digital identity data using the microprocessor identity information"<br><br>Structure: microprocessor, e.g., Fig. 4, Fig. 6 (405, 605); no algorithm disclosed; indefinite.<br><br>Alternatively: to the extent Section 112 ¶ 6 does not apply: indefinite under Section 112 ¶ 2. |
| "the digital identity data is bound to the microprocessor identity device using an encryption algorithm and the microprocessor identity information"<br><br>('895 Patent, Claim 1) | Section 112 ¶ 6 does not apply; not indefinite under Section 112 ¶ 2; plain and ordinary meaning. | Section 112 ¶ 6 applies.<br><br>Function: "binding the digital identity data to the microprocessor identity device by encrypting the digital identity data using the microprocessor identity information"<br><br>Structure: microprocessor, e.g., Fig. 4, Fig. 6 (405, 605); no algorithm disclosed; indefinite.<br><br>Alternatively: to the extent Section 112 ¶ 6 does not apply: indefinite under Section 112 ¶ 2. |
| "the digital identity data is bound to the microprocessor by encrypting, using the microprocessor, the digital identity data using an algorithm that uses the microprocessor identity information" | Section 112 ¶ 6 does not apply; not indefinite under Section 112 ¶ 2; plain and ordinary meaning. | Section 112 ¶ 6 applies.<br><br>Function: "binding the digital identity data to the microprocessor by encrypting the digital identity data using the microprocessor identity information" |

| | | |
|---|---|---|
| ('948 Patent, Claim 1) | | <u>Structure</u>: microprocessor, *e.g.*, Fig. 4, Fig. 6 (405, 605); no algorithm disclosed; indefinite.<br><br><u>Alternatively</u>: to the extent Section 112 ¶ 6 does not apply: indefinite under Section 112 ¶ 2. |

### *Whether Section 112 ¶ 6 applies*

Patent applicants may express claim limitations using functional language. *Williamson*, 792 F.3d at 1347–49. Means-plus-function claiming occurs when the claim language invokes Section 112 ¶ 6:

> An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

35 U.S.C. § 112, ¶ 6. "Section 112 ¶ 6 offers patent applicants two options: (1) recite, in the claim, a function without reciting structure for performing the function and limit the claims to the structure, materials, or acts disclosed in the specification (or their equivalents), in which case [Section] 112 ¶ 6 applies, or (2) recite both a function and the structure for performing that function in the claim, in which case [Section] 112 ¶ 6 is inapplicable." *Dyfan, LLC v. Target Corp.*, 28 F.4th 1360, 1365 (Fed. Cir. 2022).

Conducting a means-plus-function analysis involves two steps. *Id.* First, the court must first determine "whether a claim limitation is drafted in means-plus-function format"—in other words, whether Section 112 ¶ 6 applies. *Id.* Second, if the court determines that Section 112 ¶ 6 applies, it must determine "what structure, if any, disclosed in the specification corresponds to the claimed function." *Id.* Because the court concludes that Section 112 ¶ 6 does not apply, it will limit the analysis to the first step—determining whether the claims are drafted in means-plus-function format.

To determine whether Section 112 ¶ 6 applies, the court must determine if the limitation recites sufficiently definite structure to a person of ordinary skill in the art. *Id.* If the limitation recites sufficiently definite structure, it is not drafted in means-plus-function format, and Section 112 ¶ 6 does not apply. *Id.*

Courts presume that Section 112 ¶ 6 applies when the limitation uses the word "means." *Williamson*, 792 F.3d at 1348. If the limitation does not use the word "means," then courts presume that Section 112 ¶ 6 does not apply. *Id.* "That presumption can be overcome, but only if the challenger demonstrates that the claim term fails to recite sufficiently definite structure or else recites function without reciting sufficient structure for performing that function." *Samsung Elecs. Am., Inc. v. Prisua Eng'g Corp.*, 948 F.3d 1342, 1353–54 (Fed. Cir. 2020) (citing *Williamson*, 792 F.3d at 1349). A party challenging the presumption that Section 112 ¶ 6 does not apply must show, by a preponderance of the evidence, that a person of ordinary skill in the art would not have understood the claims to provide sufficient structure considering the claim as a whole. *Dyfan*, 28 F.4th at 1367. Both intrinsic and extrinsic evidence can be informative in determining whether the disputed language recites sufficiently definite structure. *Id.* at 1365–66.

The parties agree that because the disputed claim terms do not use the word "means," a presumption exists that Section 112 ¶ 6 does not apply. Apple argues, however, that the terms recite a function—"binding the digital identity data to the microprocessor identity by encrypting the digital identity data using the microprocessor identity"—without reciting sufficiently definite structure. Apple argues that claims describe "using an algorithm" to perform this function, and an "algorithm" alone cannot provide sufficient structure. Identity responds that, when read in full, the claims recite an "encryption" algorithm ('497 Patent, '895 Patent, and '948 Patent) or an "encoding" algorithm ('008 Patent)—not just an "algorithm." Identity argues that a person of

8

ordinary skill in the art would view the claim language as "a specific reference to encryption algorithms existing at the time of the invention," not as generic terms or black-box recitations of structure. Identity further argues that the Patents-in-Suit do not require the use of a particular encryption algorithm, but instead allow for the use of any available encryption algorithm that suits the required inputs.

The court agrees with Identity that Section 112 ¶ 6 does not apply to the four claims at issue. Looking first to the claims themselves, the court notes that the language does not merely recite an "algorithm," but instead recites an "encryption" or "encoding" algorithm. *See Dyfan*, 28 F.4th at 1369 ("the alleged means-plus-function limitation" must be reviewed "in full"); *Zeroclick, LLC v. Apple Inc.*, 891 F.3d 1003, 1008 (Fed. Cir. 2018) (noting that court cannot "remove[] the terms from their context"). Claim 1 of the '895 Patent specifically recites an "encryption algorithm," and the remaining claims similarly recite an "encryption" or "encoding" algorithm using different syntax. The court disagrees with Apple's contention that the word "algorithm" in the claim language means "an abstract construct that refers to a computer program or a procedure implemented in computer logic or code." The extrinsic evidence that Apple provides to support its argument—including statements from Professor Douglas C. Schmidt and excerpts from technical dictionaries—does not account for the full context of the claim language, but instead focuses almost exclusively on the word "algorithm" alone.

More persuasive is Identity's argument that a person of ordinary skill of the art would understand the claim terms to connote structure because the terms reference conventional, publicly disclosed encryption algorithms existing at the time of the invention. In *Zeroclick*, the circuit found that the terms "program" and "user interface code" made "specific references to conventional graphical user interface programs or code, existing in prior art at the time of the

9

inventions," and therefore did not constitute "generic terms or black box recitations of structure." 891 F.3d at 1008. Likewise, in *Dyfan*, the circuit determined that the terms "code" and "applications" provided sufficient structure because persons of ordinary skill in the art could select "existing 'off-the-shelf'" code or applications to perform the functions at issue. 28 F.4th at 1367–68. The circuit further held that "[c]laim terms 'need not connote a single, specific structure,' and may instead 'describe a class of structures' and still recite 'sufficiently definite structure' to not invoke [Section] 112 ¶ 6." *Id.* at 1368.

Identity provides extrinsic evidence from technical dictionaries, government publications, and other publicly disclosed sources showing that the claim language references "conventional" or "off-the-shelf" encryption or encoding algorithms known to persons of ordinary skill in the art at the time of invention. *See Zeroclick*, 891 F.3d at 1008; *Dyfan*, 28 F.4th at 1367. Identity references the Data Encryption Standard and the Advanced Encryption Standard, two federally approved standard encryption formats available at the time of the invention, both of which describe specific, publicly disclosed encryption algorithms. Dr. Schmidt, Apple's expert, testified that "many examples" of "different types of encryption algorithms" existed at the time of invention, including those available "in published form" or "in research labs." Dr. Schmidt specifically noted that, at the time of invention, various encryption algorithms "had been widely disseminated." Dr. Schmidt named "DES," "the Advanced Encryption Standard," "RSA," and "PGP" as examples of widely disseminated encryption algorithms. Further, the common specification for the Patents-in-Suit references "commercially available encryption methods." The court finds that a person of ordinary skill in the art would understand the encryption and encoding claim terms to connote sufficient structure because they describe conventional, off-the-shelf algorithms known at the time of invention.

The court agrees with Identity that Apple fails to overcome the presumption that Section 112 ¶ 6 does not apply to the claims at issue. Having considered Apple's arguments and evidence, including Professor Schmidt's testimony, language from the specification, and excerpts from the patent history, the court concludes that Apple has not shown by a preponderance of the evidence that a person of ordinary skill in the art would not have understood the disputed claims to provide sufficient structure. The court concludes that Section 112 ¶ 6 does not apply to the disputed terms in Claim 1 of the '497 Patent, Claim 1 of the '008 Patent, Claim 5 of the '894 Patent, or Claim 1 of the '948 Patent.

### *Whether the disputed terms are indefinite*

Apple argues in the alternative that even if Section 112 ¶ 6 does not apply to the disputed terms, the claims are indefinite under Section 112 ¶ 2. Apple argues that neither the claims nor the specification explains the use of the microprocessor identity (or microprocessor identity information). Apple further argues that because the Patents-in-Suit do not disclose a specific algorithm, a person of ordinary skill in the art cannot determine the scope of the claims. Identity responds that the claims and the specification inform a person of ordinary skill in the art on the scope of the invention by providing clear inputs and outputs for an encryption or encoding algorithm. Identity argues that the claims provide a specific invention of binding digital identity data to the microprocessor or microprocessor identity using an encryption or encoding algorithm.

"[I]ndefiniteness is a question of law and in effect part of claim construction." *ePlus, Inc. v. Lawson Software, Inc.*, 700 F.3d 509, 517 (Fed. Cir. 2012). Patent claims must particularly point out and distinctly claim the subject matter regarded as the invention. 35 U.S.C. § 112, ¶ 2. A claim, when viewed in light of the intrinsic evidence, must "inform those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus Inc. v. Biosig Instruments, Inc.*,

11

572 U.S. 898, 910 (2014). If it does not, the claim fails under Section 112 ¶ 2 and is therefore invalid as indefinite. *Id.* at 901. Whether a claim is indefinite is determined from the perspective of one of ordinary skill in the art as of the time the application was filed. *Id.* at 911.

The court agrees with Identity that the claims particularly point out and distinctly claim the subject matter regarded as the invention. Having reviewed the intrinsic evidence, the court finds that the disputed claims inform those skilled in the art about the scope of the invention with reasonable certainty. The claims specifically recite binding digital identity data to the microprocessor identity (or the "microprocessor" or the "microprocessor identity device," depending on the claim) using an encryption or encoding algorithm. The court concludes that the disputed claims are not indefinite.

### *The court's construction of the first set of disputed terms*

Having determined that Section 112 ¶ 6 does not apply to the first set of disputed claim terms and that the claims are not otherwise indefinite under Section 112 ¶ 2, the court concludes that the terms be given their **plain and ordinary meaning**.

**B.     Second set of disputed terms**

For the second set of claim terms at issue, the parties dispute whether certain language that recites a "microprocessor identity" requires construction beyond its plain and ordinary meaning. Apple proposes a construction that adds the phrase "does not change once assigned" when describing the unique identifier for the microprocessor. Identity argues that the claim terms should be given their plain and ordinary meaning. The parties' proposed constructions are listed in the following table:

| Claim Term | Identity's Construction | Apple's Construction |
|---|---|---|
| "microprocessor identity that uniquely identifies the microprocessor"<br><br>('497 Patent, Claim 1) | Plain and ordinary meaning. | "identifier that uniquely identifies the microprocessor and that does not change once assigned" |
| "microprocessor identity information uniquely identifies the microprocessor"<br><br>('948 Patent, Claim 1) | Plain and ordinary meaning. | "identifier that uniquely identifies the microprocessor and that does not change once assigned" |
| "microprocessor identity information that uniquely identifies the microprocessor identity device"<br><br>('008 Patent, Claim 1; '895 Patent, Claim 5) | Plain and ordinary meaning. | "identifier that uniquely identifies the microprocessor identity device and that does not change once assigned" |

The heart of the parties' dispute on the second set of claim terms is whether the unique identifier "does not change once assigned." Apple argues that the claim language, specification, and prosecution histories make clear that the microprocessor identity is static. Identity argues that Apple's proposed constructions impermissibly narrow the scope of the claim terms from their plain and ordinary meaning.

Apple first argues that the claim language shows that the microprocessor identifier is a "static value" because the terms recite a microprocessor identity information that "uniquely identifies" the microprocessor. Apple argues that if the identifier could change after it has been assigned, "it may no longer uniquely identify the microprocessor/microprocessor identity device because it might change to the same value already assigned to another microprocessor/microprocessor identity device." Identity responds that Apple's argument fails because "[t]wo identities can be generated at once, or a number could be generated after programming, each of which would still uniquely identify the microprocessor." Identity offers examples of designs where the microprocessor identity would be changed or updated without running into the problem that Apple describes. The court agrees with Identity that the claim

13

language does not, by itself, indicate that the microprocessor identity "does not change once assigned." *See Phillips*, 415 F.3d at 1312 (claim terms "are generally given their ordinary and customary meaning.").

Second, Apple argues that the specification supports the proposed constructions because it describes a "unique" microprocessor identity and refers to the identity information as being "etched" onto the microprocessor or the memory. Apple argues that etching is permanent, indicating that the identifier cannot be changed once assigned. Identity responds that "etching" refers to a process that can be reversed or modified and that etching can occur more than once on the programmable read-only memory.

The court notes that it may read claims in view of the specification, but it cannot import limitations from the specification into the claims. *Hill-Rom Servs., Inc. v. Stryker Corp.*, 755 F.3d 1367, 1371 (Fed. Cir. 2014). Although the specification describes a "unique" microprocessor identifier, the qualifier "unique" does not make clear that the identifier "does not change once assigned." Likewise, the concept of "etching" as described in the specification also does not make clear that the identifier "does not change once assigned." The court concludes that reading the claim terms in light of the specification does not support the construction that the identifier "does not change once assigned."

Apple's final and most persuasive argument is that the doctrine of prosecution history disclaimer requires the addition of "does not change once assigned" to the construction of the terms. Apple provides several excerpts from the applicant's responses to the United States Patent and Trademark Office when prosecuting the '497 Patent. The excerpts that Apple provides include several statements using variations of the language: "the microprocessor identity does not change once as assigned." Identity responds that, when read in their full context, these statements show

14

that the applicant aimed to show that its identifier is "more permanent" than the identifiers used in prior art. Identity also argues that the statements pertain to specific claim language that was not used in the final versions of the Patents-in-Suit.

"The party seeking to invoke prosecution history disclaimer bears the burden of proving the existence of a 'clear and unmistakable' disclaimer that would have been evident to one skilled in the art." *Trivascular, Inc. v. Samuels*, 812 F.3d 1056, 1063–64 (Fed. Cir. 2016). "Where an applicant's statements are amenable to multiple reasonable interpretations, they cannot be deemed clear and unmistakable." *3M Innovative Properties Co. v. Tredegar Corp.*, 725 F.3d 1315, 1326 (Fed. Cir. 2013). Although Apple provides persuasive excerpts from the prosecution history of the '497 Patent, Identity also provides reasonable alternative interpretations of the statements at issue. The bar that Apple must clear to invoke the doctrine of prosecution history disclaimer is high, and the court finds that Apple falls short. The court concludes that the prosecution history—as well as the claims themselves and the specification—does not demand construction of the terms at issue beyond their plain and ordinary meaning.

### The court's construction of the second set of disputed terms

Having determined that the claim language, specification, and prosecution history do not warrant a construction of the second set of disputed claim terms that adds the language "does not change once assigned" when referencing the microprocessor identifier, the court concludes that the terms be given their **plain and ordinary meaning**.

C.  **Summary table of the court's construction of the disputed terms**

| Claim Term | Court's Construction |
|---|---|
| "the digital identity data is bound to the microprocessor identity by encrypting the digital identity data using an algorithm that uses the microprocessor identity"<br><br>('497 Patent, Claim 1) | **Section 112 ¶ 6 does not apply. Terms are not indefinite under Section 112 ¶ 2. Plain and ordinary meaning.** |
| "the digital identity data is bound to the microprocessor identity device by encoding, using the microprocessor, the digital identity data using an algorithm that uses the microprocessor identity information"<br><br>('008 Patent, Claim 1) | **Section 112 ¶ 6 does not apply. Terms are not indefinite under Section 112 ¶ 2. Plain and ordinary meaning.** |
| "the digital identity data is bound to the microprocessor identity device using an encryption algorithm and the microprocessor identity information"<br><br>('895 Patent, Claim 1) | **Section 112 ¶ 6 does not apply. Terms are not indefinite under Section 112 ¶ 2. Plain and ordinary meaning.** |
| "the digital identity data is bound to the microprocessor by encrypting, using the microprocessor, the digital identity data using an algorithm that uses the microprocessor identity information"<br><br>('948 Patent, Claim 1) | **Section 112 ¶ 6 does not apply. Terms are not indefinite under Section 112 ¶ 2. Plain and ordinary meaning.** |
| "microprocessor identity that uniquely identifies the microprocessor"<br><br>('497 Patent, Claim 1) | **Plain and ordinary meaning.** |
| "microprocessor identity information uniquely identifies the microprocessor"<br><br>('948 Patent, Claim 1) | **Plain and ordinary meaning.** |
| "microprocessor identity information that uniquely identifies the microprocessor identity device"<br><br>('008 Patent, Claim 1; '895 Patent, Claim 5) | **Plain and ordinary meaning.** |

## IV. Conclusion

For the above reasons, the court construes the disputed claims as noted and so **ORDERS**. No other claim terms require construction.

**IT IS FURTHER ORDERED** that this cause is set for a Scheduling Conference on **January 19, 2023, at 9:30 a.m.**, in Courtroom 7, Seventh Floor, United States Courthouse, 501 W. 5th Street, Austin, Texas 78701. The parties shall meet and confer before that date in an attempt to settle this case. If the case is not settled, the parties shall confer in an attempt to reach agreement on a schedule to follow for the remainder of this case. The court will render a Scheduling Order as a result of the aforementioned Scheduling Conference.

**IT IS FINALLY ORDERED** that Plaintiff Identity Security LLC's Motion to Supplement Claim Construction Record filed April 12, 2022 (Doc. #67) is **DENIED**, as the documents that Identity seeks to include in the claims-construction record do not affect this court's construction of the disputed terms.

SIGNED this **2nd** day of November, 2022.

LEE YEAKEL
UNITED STATES DISTRICT JUDGE